OPINION OF THE COURT
Per Curiam.
The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts served the respondent with a petition dated February 14, 2012, containing four charges of professional misconduct. After a pre-hearing conference on August 9, 2012, and a hearing on January 22, 2013, the Special Referee issued a report which sustained all of the charges. The Grievance Committee now moves to confirm the Special Referee’s report and impose such discipline upon the respondent as this Court deems just and proper. The respondent has filed a cross motion wherein she does not dispute the Special Referee’s findings that she engaged in misconduct. In that regard, she asks that the motion to confirm be granted, except as to the Special Referee’s finding that her expert was not credible. The respondent seeks a suspension of one year, applied nunc pro tunc from the date of her interim suspension, or, in other words, “time served,” and summary reinstatement to the practice of law.
*14 Charge one alleges that the respondent engaged in a pattern and practice of converting client funds entrusted to her as a fiduciary, in violation of rules 1.15 (a) and 8.4 (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). In or about August 2008, Juan Sanchez retained the respondent in connection with his attempt to sell certain real property located in Brooklyn to Hussian Fayaz. On September 3, 2008, the respondent deposited a down payment on behalf of Sanchez in the amount of $50,000 into her attorney escrow account at JP Morgan Chase Bank, entitled “Diana Bronstein Attorney at Law PC IOLA Trust Acct” (hereinafter the escrow account). The deal fell through, and Fayaz commenced an action in the Supreme Court, Kings County, against Sanchez to recover his down payment. In an order dated August 12, 2009, the respondent was directed to return the full amount of the down payment to Grant Pudalov, Fayaz’s attorney. The respondent issued a check dated December 10, 2009, in the amount of $50,000, to Pudalov.
The respondent should have been holding the $50,000 down payment in her escrow account from the time of its deposit on September 3, 2008, through the time she released the funds to Pudalov on or about December 10, 2009. Subpoenaed bank records revealed that during the intervening period, the balance in the respondent’s escrow account fell below $50,000 on eight occasions: May 13, 2009 ($47,387.48), June 8, 2009 ($47,311.37), June 9, 2009 ($47,387.48), June 23, 2009 ($41,387.48), July 22, 2009 ($40,987.48), August 7, 2009 ($37,887.48), August 11, 2009 ($37,087.48), and November 23, 2009 ($38,944.98).
On August 31, 2009, the respondent deposited $20,000 into her escrow account. These funds were received from Sheldon Mar, an intended buyer of property owned by the respondent’s clients Leopold Servakh and Sofiya Sosnovskaya. On October 6, 2009, the respondent deposited $17,750 from GEICO General Insurance Co. on behalf of her client Edward Samuylin. On October 6, 2009, the balance in the escrow account was $74,837.48 when it should have been at least $87,750, as no disbursements were made to any of the four individuals to whom these escrowed funds belonged.
Before issuing the check to Pudalov on December 10, 2009, the respondent made two deposits into her escrow account to bring her escrow balance above $50,000. On November 23, 2009, the escrow balance was $38,944.98. On November 27, 2009, the respondent deposited a down payment check in the amount of $54,399 from Ryan Tang, on behalf of the respondent’s client *15 Yanina lian, raising the escrow balance to $93,343.98. On December 8, 2009, the respondent deposited a down payment check in the amount of $25,000 into her escrow account from Lazar Shabshaikhes, on behalf of the respondent’s client Beata Kozlovsky, raising the balance to $118,343.98. Since no other deposits were made between November 23, 2009, and December 15, 2009, the payment to Pudalov on December 15, 2009, resulted in the invasion of the down payments of Tang and Shabshaikhes. On December 15, 2009, the escrow balance dropped to $68,343.98, when it should have been at least $79,399, since no disbursements were made from the funds of Tang and Shabshaikhes.
On December 24, 2009, the respondent deposited an additional $5,000 down payment into her escrow account from Shabshaikhes, on Kozlovsky’s behalf, bringing the total escrow deposit for this client to $30,000. On April 1, 2010, the respondent’s escrow balance was $18,444.98, well below the amount she should have been holding for Kozlovsky. On April 2, 2010, the respondent issued a check from her escrow account in the amount of $21,987.20 to Kozlovsky, causing the respondent’s escrow balance to fall below $0 to -$3,542.22. The respondent should still have been holding $8,012.80 on behalf of Kozlovsky.
The respondent used client funds from her escrow account to pay personal expenses. She authorized the following online payments from her escrow account: (1) $76.11 to PayPal on June 8, 2009; (2) $100 to Quill Corporation on June 9, 2009; (3) $400 to Chase Card Services on July 22, 2009; (4) $800 to Home Depot Credit Services on August 11, 2009; and (5) $154.80 to Cable-vision on April 13, 2010.
Charge two alleges that the respondent engaged in conduct involving deceit, dishonesty, and misrepresentation, in violation of rules 4.1 and 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0). The respondent was required to hold the $50,000 down payment from Fayaz in her escrow account, intact, until closing, direction from both parties to the transaction to release the funds, or direction from a court to release the funds. On May 18, 2009, the respondent sent Fayaz’s attorney, Pudalov, a facsimile transmission in which she stated that the escrowed funds were in her account. However, on May 18, 2009, the respondent’s escrow balance was less than $50,000. On October 23, 2009, and October 30, 2009, the respondent wrote to Pudalov: “[p]lease be assured that the $50,000 down payment regarding the above referenced case still remains in *16 my Escrow Account.” On both of those dates, the respondent’s escrow balance was $61,744.98, with $20,000 of that sum being held as a down payment for another client.
Charge three alleges that the respondent failed to maintain the required bookkeeping records for her escrow account, in violation of rules 1.15 (d) and 8.4 (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). The respondent failed to maintain for her escrow account a contemporaneous ledger or similar record showing the date, source, and description of each item deposited, and the date, payee, and purpose of each withdrawal or disbursement.
Charge four alleges that the respondent failed to file a retaining or closing statement with the Office of Court Administration in connection with clients’ personal injury matters involving contingency fees as required by 22 NYCRR 691.20 (a) and (b), in violation of rule 8.4 (d) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0). Between 2006 and 2011, the respondent handled four personal injury matters where retainer and closing statements were required to be filed with the Office of Court Administration. She failed to file those required statements.
Based on the evidence adduced, and the respondent’s admissions, the Special Referee properly sustained all four charges. Accordingly, the Grievance Committee’s motion to confirm the Special Referee’s report and impose discipline is granted, the respondent’s cross motion is granted to the extent that the Special Referee’s findings sustaining the charges are confirmed, and the cross motion is otherwise denied.
The respondent was previously admonished in January 2012 for failing to promptly return unearned legal fees and for engaging in conduct prejudicial to the administration of justice for failing to communicate with the court.
In mitigation, the respondent asserts that she made mistakes, and attributes them to the fact that during the relevant time period she was distracted and unfocused owing to personal circumstances in her life, i.e, the birth of a child in September 2008, the death of her grandmother in August 2009, which left her devastated; a second pregnancy; the death of her father in May 2011; and the death of her aunt in June 2011. The respondent’s therapist, Lois Winston, opined that the respondent had suffered from postpartum depression, major depression, and posttraumatic stress disorder, all resulting from these events in her life, which occurred one after another. Winston *17 further opined that the respondent’s misconduct was a direct result of her depression, which impaired her ability to focus. In seeking a one-year suspension, applied nunc pro tunc from the date of her interim suspension, the respondent asks this Court to also consider the fact that she did not act with venality, no clients were harmed, she is remorseful, she cooperated with the investigation, she was relatively inexperienced, and her general reputation is that of an honest attorney.
We agree with the Special Referee’s finding that the testimony of the respondent’s therapist was not credible. The evidence revealed that the respondent never sought professional help during any of the years she experienced the traumas she identifies, and began therapy in August 2012, only after she retained counsel and was suspended by this Court. Moreover, the respondent’s alleged depression cannot explain why her inattention affected only escrow matters and not other aspects of her law practice. It is far more likely that the respondent’s admitted errors were a product of not having implemented basic accounting procedures to monitor her escrow account, which were compounded by her failure to review her bank statements or monitor her accounts online. While the respondent’s claim of depression as the cause of her misconduct is not credible, this Court nonetheless acknowledges that she did experience many emotional events in a relatively short time frame.
Under the totality of circumstances, the respondent is suspended from the practice of law for two years, with credit for the time elapsed under the order of interim suspension.
Eng, EJ., Mastro, Rivera, Skelos and Austin, JJ., concur.
Ordered that the petitioner’s motion to confirm the Special Referee’s report and impose discipline is granted; and it is further,
Ordered that the respondent’s cross motion is granted to the extent that the Special Referee’s findings sustaining the charges are confirmed, and the cross motion is otherwise denied; and it is further,
Ordered that the respondent, Diana Bronstein, is suspended from the practice of law for a period of two years, with credit for the time elapsed under the interim order of suspension, and continuing until further order of this Court. The respondent may apply for reinstatement immediately. In such application, the respondent shall furnish satisfactory proof (1) that during the said period she refrained from practicing or attempting to *18 practice law, (2) that she has fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10), (3) that she has complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c), and (4) that she has otherwise properly conducted herself; and it is further,
Ordered that the respondent, Diana Bronstein, shall continue to promptly comply with this Court’s rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); and it is further,
Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until such further order of this Court, the respondent, Diana Bronstein, shall continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,
Ordered that if the respondent, Diana Bronstein, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 691.10 (f).